UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Oliver Brown

    v.                                    Civil No. 14-cv-256-JL
                                               Opinion No. 2015 DNH 141
Carolyn W. Colvin, Acting Commissioner,
Social Security Administration


## ORDER ON APPEAL

John Oliver Brown appeals the Social Security
Administration's ("SSA") denial of his application for disability
insurance benefits.  An administrative law judge at the SSA
("ALJ") ruled that, despite Brown's severe impairments
(osteoarthritis in his left knee, Hepatitis C, affective
disorder, and a history of substance abuse), he retains the
residual functional capacity ("RFC") to perform jobs that exist
in significant numbers in the national economy, and, as a result,
is not disabled.  See 20 C.F.R. § 404.1505(a).  The Appeals
Council later denied Brown's request for review of the ALJ's
decision, see id. § 404.968(a), with the result that the ALJ's
decision became the final decision on Brown's application, see
id. § 404.981.  Brown then appealed the decision to this court,
which has jurisdiction under 42 U.S.C. § 405(g) (Social
Security).

Brown has filed a motion to reverse the decision.  See L.R.
9.1(b)(1).  He contends that the ALJ (1) lacked substantial

evidence to support his conclusion as to Brown's RFC and (2) erred in his assessment of Brown's credibility.  The Acting Commissioner of the SSA maintains that the ALJ committed no error and has cross-moved for an order affirming the decision.  See L.R. 9.1(d).  After careful consideration, the court agrees with the Acting Commissioner that the ALJ committed no reversable error and accordingly grants the Acting Commissioner's motion to affirm (and denies Brown's motion to reverse) the ALJ's decision.

## I.   Applicable legal standard

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 2 211 F.3d 652.  The court will uphold the ALJ's decision if it is supported by substantial evidence, which is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  Though the evidence may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Heath & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

## II.  Background

In assessing Brown's request for disability benefits, the ALJ engaged in the requisite five-step process.  See 20 C.F.R. § 416.920.  He determined that Brown suffered from four severe impairments: osteoarthritis of the left knee, Hepatitis C, affective disorder, and a history of substance abuse.  After finding that Brown's impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security Regulations, see 20 C.F.R. §§ 416.920(d), 416.925, and 416.926, the ALJ concluded that Brown retained the RFC "to perform light work as defined in 20 C.F.R. 416.967(b)" with the following limitations:

> [H]e could sit up to 6 hours and stand/walk up to 2 hours in an 8-hour workday.  He could occasionally perform the postural activities . . . .  He would be limited to simple, repetitive tasks.  He could maintain concentration, persistence, and pace, for one hour at a time before having a 2-3 minute break before continuing on for another hour.  The claimant could interact with coworkers and supervisors on routine matters, but he should avoid more than superficial interactions with the public.

Admin. R. at 26.  The ALJ then determined that Brown was unable to perform his past relevant work as an automobile mechanic helper, automobile transmission mechanic, gas station attendant, and service manager of an automobile specialist store.  See 20 C.F.R. § 404.1565.  At step five, where the SSA bears the burden of showing that a claimant can perform other jobs that exist in

3

significant numbers in the economy, <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001), the ALJ concluded that Brown could perform such jobs as inspection table worker, preparer (polishing jewelry), and production sorter or bench work (sorting nuts and bolts.  Therefore, the ALJ found, Brown was not disabled within the meaning of the Social Security Act.

### III. Analysis

Brown raises essentially four issues in this appeal, though all are closely related.  First, Brown contends that the ALJ's assessment of Brown's physical RFC is not supported by substantial evidence in the record because the ALJ relied primarily on the opinion of a non-examining expert who had not reviewed the full record.  As a related matter, he also argues that the ALJ incorrectly weighed the opinion evidence concerning Brown's physical limitations, giving more weight to the non-examining expert's opinion over that of Brown's treating physician.  Third, Brown challenges the ALJ's assessment of the credibility of Brown's statements about the intensity and limiting effect of the pain he felt in his left knee and his fatigue.  Finally, Brown contends that substantial evidence does not support the ALJ's assessment of Brown's mental RFC.  For the

reasons detailed below, the court finds that the ALJ did not err in any of these assessments.

### A.   Physical RFC determination

In evaluating Brown's RFC as relating to his physical disabilities, the ALJ had three medical opinions at his disposal: that of Dr. Ricardo Gonzales, Brown's treating physician; that of Dr. Louis Rosenthall, a state agency medical consultant; and that of Dr. William Windler, a consultative examiner.  The ALJ patterned his RFC finding on the June 2, 2011, residual functional capacity assessment of Dr. Rosenthall, the state agency reviewer.  Dr. Rosenthall indicated that Brown could stand or walk for 2 hours and sit for about 6 hours in an 8-hour workday.  He further opined that Brown could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, occasionally perform the various postural limitations, and that Brown's ability to push and pull was unlimited.  Dr. Rosenthall discussed the medical support for these conclusions, noting that the record reflected that Brown used a cane and complained of fatigue, but that his "[g]ait and station were normal."  Admin. R. at 359.

Brown maintains that the ALJ erred in relying on Dr. Rosenthall's opinion because Dr. Rosenthall did not examine Brown and did not review the entire record.  Specifically, Dr.

Rosenthall -- whose opinion issued on June 2, 2011 -- did not review Brown's treatment record after that date or the opinion of Dr. Gonzales, which was issued on October 4, 2012.  Thus, Brown argues, the ALJ's RFC determination is not based on substantial evidence.  This argument is unavailing.

As a general matter, "an ALJ may place '[g]reater reliance' on the assessment of a non-examining physician where the physician 'reviewed the reports of examining and treating doctors ... and supported [his] conclusions with reference to medical findings.'"  Ferland v. Astrue, 2011 DNH 169, 10 (quoting Quintana v. Comm'r of Social Security, 2004 WL 2260103, at *1 (1st Cir. 2004)).  Dr. Rosenthall's report meets this baseline requirement.  His report explains that he reviewed the records of Brown's treating providers that were available at the time he made his report.  He also supported his conclusions with detailed citations to that record.  See Moss v. Astrue, 2011 DNH 064, at 46 ("The ALJ's decision to adopt an assessment by a non-treating physician is further supported if that assessment references specific medical findings indicating that the claimant's file was reviewed with care." (citing Berrios Lopez v. Sec'y of Health & Human Servs., 951 F.2d 427, 431 (1st Cir. 1991)).

The fact that Dr. Rosenthall did not review Brown's later treatment records or the opinion of Dr. Gonzales does not

6

necessarily preclude the ALJ from relying on his assessment.  It
is true that it "can indeed be reversible error for an
administrative law judge to rely on an RFC opinion of a
non-examining consultant when the consultant has not examined the
full medical record." Ferland, 2011 DNH 169 at 11 (quoting
Strout v. Astrue, Civil No. 08-181-B-W, 2009 WL 214576, at *8 (D.
Me. Jan. 28, 2009)).  However, "the fact that an opinion was
rendered without the benefit of the entire medical record does
not, in and of itself, preclude an ALJ from giving significant
weight to that opinion." Coppola v. Astrue, 2014 DNH 33, 23-24.
An ALJ can rely on such an opinion where "the medical evidence
postdating the reviewer's assessment does not establish any
greater limitations or where the medical reports of claimant's
treating providers are arguably consistent with, or at least not
'clearly inconsistent' with, the reviewer's assessment." Ferland
2011 DNH 169 at 11 (internal citations omitted).  That is the
case here.

Brown asserts that his medical records post-dating Dr.
Rosenthall's report demonstrate that (1) Brown suffered from
fatigue as a result of his Hepatitis C, and (2) Brown suffered
from debilitating pain in his right knee from his osteoarthritis.
As support, Brown points to some nine pages of treatment notes
from October 2011 through August 2012 and the opinion of Dr.

Gonzales, none of which Dr. Rosenthall reviewed.  The ALJ
reviewed these records and concluded that Dr. Rosenthall's
opinion "remains consistent with the record in its entirety."
Admin. R. at 30.  The record supports this conclusion.  All but
one of these treatment notes document only Brown's subjective
complaints of fatigue and pain.  As discussed <u>infra</u>, the ALJ
supportably concluded that those statements were not credible.
Accordingly, to the extent that Dr. Rosenthal's assessment is
inconsistent with more recent medical records documenting Brown's
complaints of pain and fatigue, that assessment is not undermined
and the ALJ did not err in relying on it.  This leaves only the
record of Brown's visit to Dr. Gonzales on December 23, 2011, and
Dr. Gonzales's subsequent opinion.  As the ALJ explained, Dr.
Gonzales's treatment note does not include an observation of pain
or pain behaviors, only a tenderness to palpitation and Brown's
subjective reports.  It does not document Brown's fatigue.  As
for Dr. Gonzales's opinion, the ALJ permissibly afforded "little
weight" to Dr. Gonzales's opinions for the reasons discussed
below.  Accordingly, the ALJ did not err in concluding that the
medical records post-dating Dr. Rosenthall's report were neither
inconsistent that report nor established greater limitations, and

8

thus did not err in relying on Dr. Rosenthall's report in his RFC analysis.[1]

### B.   Weight of the physical limitation opinion evidence

Brown contends that the ALJ also erred by failing to give controlling weight to the opinion of Dr. Gonzales, Brown's treating physician.  Dr. Gonzales opined that Brown could sit for no more than three hours in an eight-hour workday and stand or walk for only one hour each in the same time period, for a combined total of no more than three hours; could never perform any postural activities and must never be exposed to certain environmental conditions; would be absent from work about three times per month; required a cane to walk; and must elevate his feet during the workday.  Dr. Gonzales concluded that Brown has been subject to these limitations since 1986 and concluded that Brown is "explicitly disabled."  Admin. R. at 482, 534-37.  The ALJ gave "little weight" to Dr. Gonzales's opinion.  Because the ALJ adequately explained his reasons for discounting Dr.

--------

[1]It is worth noting that the ALJ did not rely solely on the report of Dr. Rosenthall.  Along with the treatment notes of record, the ALJ also considered a consultative examination performed by Dr. Windler, who -- like Dr. Rosenthall -- concluded that Brown could stand or walk for two hours and sit for six hours in an eight-hour workday.  Dr. Windler likewise acknowledged that Brown's knee was tender to palpitation and that he used a crutch, but did not appear in pain or discomfort.

Gonzales's opinion and those reasons are supported by substantial evidence, the court finds no error.

The ALJ must weigh the medical opinions "based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention." Grant v. Colvin, 2015 DNH 059, 6-7 (citing 20 C.F.R. § 416.927(c)). The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors." Swanburg v. Astrue, 2012 DNH 71, 14 (internal quotations omitted); see 20 C.F.R. § 404.1527(d)(2). When the ALJ does not give the treating physician's opinion controlling weight, he determines the amount of weight due to that opinion by considering a number of factors articulated in 20 C.F.R. § 404.1527(c), including the length, nature, and extent of the treatment relationship, the frequency of examination, and the consistency of that opinion with the record as a whole.[2] The ALJ must provide "good reasons" for the

---

[2]The ALJ need not explicitly take account of all the factors articulated in 20 C.F.R. § 404.1527(c) in determining what weight to give a treating physician's opinion, so long as the court is able, as it is here, "to discern the rationale the ALJ used to reach his determination and that determination is founded on 'good reasons' that are supported by substantial record evidence." Figueroa v. Astrue, 2012 DNH 101, 15.

weight given to a treating source's opinion.  Id.; see Social
Security Ruling ("SSR") 96-2p, Policy Interpretation Ruling
Titles II and XVI: Giving Controlling Weight to Treating Source
Medical Opinion, 1996 WL 374188, at *5 (S.S.A. 1996).

    After properly following this process, the ALJ concluded
that Dr. Gonzales's opinion was "not supported by or consistent
with treatment notes" and therefore afforded it "little weight."
Admin. R. at 29.  As the ALJ observed, the record contains only
one treatment note from Dr. Gonzales, dated December 12, 2011, in
which he indicates that he had not treated Brown since March
2009.  This limits the amount of weight Dr. Gonzales's opinion
may be afforded.  See 20 C.F.R. § 404.1527(c)(2)(i) ("Generally,
the longer a treating source has treated you and the more times
you have been seen by a treating source, the more weight we will
give to the source's medical opinion.").  The ALJ further found
that Dr. Gonzales's opinion was not consistent with that
treatment note.  Though Dr. Gonzales observed therein that he
"can see how this deformity [of Brown's proximal tibia] would
cause severe pain," Admin. R. at 378, as the ALJ pointed out, the
treatment notes do not indicate that Brown "presented in any pain
or with any pain behaviors," Admin. R. at 28.  Nor does Dr.
Gonzales's opinion reflect any support -- from the treatment note
or otherwise -- for the limitations that Brown could not lift and

carry more than ten pounds; engage in any postural activities; or
tolerate exposure to unprotected heights, moving mechanical
parts, humidity and wetness, irritants, extreme heat or cold, or
vibrations, or operate a motor vehicle.  A treating physician's
opinion should be given deference only insofar as it is "well-
supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with the other
substantial evidence in [his] case record."  20 C.F.R. §
404.1527(d)(2). The ALJ may discount an opinion that is not so
supported.  See, e.g., Carrion v. Colvin, 2014 DNH 174, 6-8
(upholding ALJ's decision to reject treating physician's opinions
as unsupported when claimant failed to point to any support in
physician's notes or elsewhere).

Nor did the ALJ err in discounting Dr. Gonzales's conclusion
that Brown "is significantly disabled as a result of [his] injury
and the subsequent arthritis."  Admin. R. at 482.  As Brown
acknowledges, a determination of disability is one reserved to
the ALJ.  20 C.F.R. § 404.1527(d)(2)(I); see also SSR 96-5p,
Titles II and XVI: Medical Source Opinions on Issues Reserved to
the Commissioner, 1996 WL 374183, at *2 (S.S.A. 1996)
("[T]reating source opinions on issues that are reserved to the
Commissioner are never entitled to controlling weight or special
significance.").  The ALJ need not, as Brown suggests, defer to

12

such an opinion; he need only "consider [that] opinion and, if he rejects it, explain his reasons for doing so." <u>Coppola</u>, 2014 DNH 33, 16.  And he did so here.

### C.  Credibility Determination

Brown's third contention with the ALJ's decision concerns the ALJ's assessment that Brown's statements about the intensity, persistence, and limiting effects of the knee pain resulting from his osteoarthritis and fatigue from his Hepatitis C were not credible.  The law "requires the ALJ to evaluate the credibility of a claimant's testimony about [his] symptoms and their limiting effect in light of all the other evidence of record, rather than to simply accept the testimony as true." <u>Scanlon v. Astrue</u>, 2013 DNH 088, 15 n.4.  And that determination is entitled to deference, especially when supported by specific evidence in the case record. <u>Simmons v. Astrue</u>, 736 F. Supp. 2d 391, 401 (D.N.H. 2010) (citing <u>Frustaglia v. Sec'y of Health and Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987).  Even though more than one conclusion could be drawn from the evidence in the record, the ALJ's credibility determination will be upheld so long as "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (quotation marks omitted).

### 1.   Knee Pain

Though acknowledging Brown's history of osteoarthritis in his left knee, the ALJ found that the treatment notes concerning that ailment did not support Brown's allegations of pain or the extent of his claimed functional limitations.  As Brown observes, the ALJ must evaluate such statements according to SSR 96-7p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (S.S.A. 1996), which "outlines a specific staged inquiry that consists of the following questions, in the following order: (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?"  <u>Comeau v. Colvin</u>, 2013 DNH 145, 21 (internal quotations omitted); <u>see</u> 20 C.F.R. § 404.1529.

At the first step, the ALJ found that Brown had an impairment -- osteoarthritis -- that could produce his claimed symptoms.  Brown contends that the ALJ erred at the second step: because the objective medical evidence substantiates Brown's statements about his symptoms, he argues the ALJ should not have proceeded to a credibility analysis at all.  <u>Caille v. Comm'r of</u>

14

Soc. Sec., Civ. No. 09-1305, 2010 WL 1424725, at *3 (D.P.R. Apr. 6, 2010) (explaining that "before weigh[ing] the credibility of a claimant's statements about pain . . . [the] ALJ must first find a lack of support in the objective medical evidence for the allegations of pain").  The court disagrees.  Evidence in the record supports the ALJ's conclusion that Brown's statements about his symptoms were not substantiated by objective medical evidence.  Specifically, as the ALJ noted, none of the examining sources observed that Brown presented with any pain behaviors or appeared in any distress outside of some tenderness to palpitation.  Dr. Gonzales explained only that he "can see how [Brown's impairment] would cause severe pain," Admin. R. at 378, which is consistent with the ALJ's conclusion at the first step of the inquiry that Brown's osteoarthritis could cause pain,  but Dr. Gonzales did not note that he observed any pain or that Brown's condition did cause pain.  Similarly, while Dr. Read and Dr. Windler observed that Brown walked with a cane and crutch, respectively, other treatment notes document that providers observed Brown having a normal gait and station on at least three occasions.  Having afforded this evidence due consideration, the ALJ did not err by moving on to a credibility determination.

Brown then faults that determination for relying too heavily on his daily activities.  Brown argues, in essence, that his

ability to sit to watch television does not translate to an
ability to sit at a workstation and perform a job.  But the ALJ
did not limit his consideration to this single activity.  He
considered a broad range of Brown's activities, including his
reported ability to attend to his personal hygiene, drive a car
(including operating the pedals), shop for groceries, attend
appointments, visit with friends and family, do basic household
chores such as laundry, sweeping, and picking up his belongings,
and prepare meals for up to an hour a day.  And he concluded that
these reported activities were inconsistent with Brown's
subjective complaints.  It is the ALJ's prerogative to weigh this
evidence and draw conclusions from it,  see Seavey v. Barnhart,
276 F.3d 1, 10 (1st Cir. 2001).  Such conclusions permissibly
include negative conclusions about the claimant's credibility.
Mason v. Astrue, 2013 DNH 013, 14; see also St. Pierre v.
Shalala, No. 94-232, 1995 WL 515515, at *3 (D.N.H. May 25, 1995)
("When evaluating the subjective claims of pain it is proper and,
indeed, required that the ALJ consider daily activities such as
driving, walking and household chores.  This allows the Secretary
to juxtapose the claimant's subjective allegations of pain with
the relative intensity of his daily regimen.") (internal
citations omitted).  Because the ALJ's decision "contains
specific, clear reasons for [his] credibility determination that

are supported by record evidence," <u>Perry v. Colvin</u>, 2014 DNH 198,
7, the court finds no error.

### 2.   Fatigue

Brown also assigns error to the ALJ's failure to "address
Brown's complaints of fatigue or his efforts to alleviate it
prior to his Hep C treatment." Mot. at 17.  But the ALJ did
address those complaints.  After a thorough review of Brown's
medical record in connection with his Hepatitis C, the ALJ
observed that the evidence on record, including treatment notes
and consultative examinations, lends itself to the interpretation
that Brown complained of fatigue as a side-effect of Hepatitis C
treatment, not as stemming from the disease itself.  And Brown
had since ceased that treatment.  Because the ALJ's explanation
for his conclusions as to the credibility of Brown's subjective
complaints of fatigue finds support in the record, the ALJ did
not err.

### D.   Non-Exertional RFC

In addition to Brown's physical limitations, the ALJ found
that Brown suffered from affective disorder and a history of
substance abuse.  Despite these severe impairments, the ALJ
concluded that Brown had the non-exertional RFC to "maintain

17

concentration, persistence, and pace, for one hour at a time before having a 2-3 minute break before continuing on for another hour," and that he could "interact with coworkers and supervisors on routine matters, but he should avoid more than superficial interactions with the public." Admin. R. at 26.  In evaluating Brown's RFC as relating to his mental impairments, the ALJ reviewed four medical opinions: that of Dr. Juliana Read, a licensed psychologist and consultative examiner; that of Dr. Janet Levenson, a second consultative examiner; that of Andrew Connery, a licensed psychologist who evaluated Brown; and Dr. Patricia Salt, a state agency consultant.  Brown argues that the ALJ's non-exertional RFC determination was not supported by substantial evidence in light of his primary reliance on Dr. Read's opinion, to which the ALJ gave "great weight," over Dr. Connery's opinion, which received only "little weight."

Both Dr. Read and Dr. Connery evaluated Brown; neither is a treating source.  Under such circumstances, it is for the ALJ to "decid[e] which medical opinion(s) to credit," and he is "afforded a substantial amount of discretion" so long as he "discuss[es] at least some of his reasons for accepting one source's opinion over another's." Dumensil v. Astrue, 2010 DNH 135, 13.  This allows the district court to "determine whether that discretion was exercised reasonably." Id.  As Brown

18

acknowledges, the ALJ "gave his reasons for according Dr[.] Read great weight . . . ."[3]  Motion at 8.  He explained that he relied on Dr. Read's opinion because it was "supported by and consistent with the evidence of record," including the opinion of Dr. Levenson, who evaluated Brown before his alleged onset date, and "consistent with [Brown] scoring 28/30 on the MMSE, his ability to interact with others, and his wide range of daily activities," such as socializing with friends and family.  Admin R. at 31.

Brown seeks to discount Dr. Read's report, arguing that it is (1) internally inconsistent and (2) inconsistent with other evidence in the record.  As to the first, Brown notes that Dr. Read observed Brown's disheveled appearance but opined that he could attend to personal hygiene; observed that he arrived 10 minutes late but opined that he could keep a schedule; and observed that he swore frequently and was told he had difficulty getting along with others, but opined that he could interact with them appropriately.  While it is true that the ALJ may discount a medical provider's opinion because of internal inconsistencies,

---

[3]Brown goes on to argue that "a reason is more than a stated basis for a decision; it requires making sense of things by applying logic."  Webster disagrees.  See Merriam-Webster's Collegiate Dictionary 1037 (11th ed. 2007) (defining "reason" as "a statement offered in explanation or justification.").  In any event, it is clear from the detailed nature of the ALJ's decision that he appropriately "appl[ied] logic" by balancing the record evidence and resolving the apparent conflicts therein.

see Eley v. Colvin, 2015 DNH 85, 4, it is for the ALJ to resolve such conflicts.  Irlanda Ortiz, 955 F.2d at 769.  And the ALJ's resolution of these particular conflicts is supported by Dr. Read's report and Brown's functional activity report.

Brown's contention that Dr. Read's report is inconsistent with other record evidence fares no better for similar reasons. The ALJ observed that Dr. Read's report was consistent with Brown's "scoring 28/30 on the MMSE, his ability to interact with others, and his wide range of daily activities."[4]  Admin. R. at 31.  He further found that it comported with the opinion of Dr. Levenson, even though the latter opinion was "performed prior to the alleged onset date and during a time of increased substance abuse."  Admin R. at 32.  The ALJ also considered Brown's communications with other examiners and medical providers, as well as his reported engagement with family and friends,[5] and

----

[4]While Brown correctly points out that a high score on the MMSE does not, without explanation, constitute substantial evidence, see Morin v. Colvin, 2014 DNH 9, 15, here Dr. Read explained that the two questions Brown missed concerned his "attention/calculation and recall."  Admin. R. at 334.  The ALJ further took this into account, crafting an RFC that allowed for Brown to be able to concentrate for only one hour at a time, followed by a two to three minute break.

[5]Though Brown argues that both Dr. Read and the ALJ gave too much credence to Brown's reported daily activities, Brown supports that argument only with his attorney's interpretations of the same report.  That is not a basis upon which the court can conclude that the ALJ erred.

concluded that "he was able to interact appropriately" with them
as well.  Admin. R. at 31.  Though noting one occasion of
antisocial behavior on Brown's part, the ALJ reconciled it
against other record evidence demonstrating Brown's ability to
interact with others.

Nor did the ALJ here "ignore relevant portions of the record
that conflict with his determination."  Shulkin v. Astrue, 2012
DNH 7, 21.  He considered Dr. Connery's conflicting opinion and
explained the weight he assigned that report in some detail.  The
ALJ observed, for example, that Dr. Connory's report did "not
include objective observations of [Brown], nor administration of
a mental status exam."  Admin. R. at 32.  Dr. Connery's
observations of Brown's behavior and presentation at the
examination were limited to Brown's tardiness (because he forgot
directions to the office), that Brown forgot his glasses, and
that Brown "presented as highly disorganized, having rapid
changes in mood."  Admin. R. at 382.  Instead, Dr. Connery based
his diagnosis on the results of the Million Clinical Multiaxial
Inventory-III and the Achenbach Adult Self Report.  The ALJ also
found Dr. Connery's diagnosis of schizophrenia to be inconsistent
with the opinions of the two other medical examiners on record
and Brown's own denial of any such disorder.  Since it is the
province of the ALJ to weigh the evidence and there is

substantial support for the ALJ's decision to rely more heavily on Dr. Read's opinion than Dr. Connery's, see <u>Tremblay v. Sec'y of Health & Human Servs.</u>, 676 F.2d 11, 12 (1st Cir. 1982), the court finds no error.[6]

## IV.  Conclusion

Because the ALJ's RFC assessments and his decision to find Brown's claimed symptoms less than fully credibly were supported by substantial evidence, and because he adequately explained his decision to weigh the medical opinion evidence as he did with reasons supported by substantial evidence, Brown's motion to reverse the SSA's decision[7] is DENIED, and the Commissioner's motion to affirm it[8] is GRANTED.  See 42 U.S.C. § 405(g).  The clerk shall enter judgment accordingly and close the case.[9]

---

[6]Brown also argues that the ALJ erred when he posed a hypothetical question to the vocational expert that was based upon the allegedly erroneous RFC.  Having concluded that the ALJ's RFC determination was proper and supported by substantial evidence in the record, the court finds no error.

[7]Document no. 8.

[8]Document no. 9.

[9]Counsel for the Acting Commissioner is reminded that under L.R. 7.1(a)(3), memoranda in support of a dispositive motion are limited to 25 pages.  At 26 pages, the Acting Commissioner's memorandum violates the rule.  Counsel for the plaintiff is likewise reminded that under L.R. 5.1(a), memoranda are to be page-numbered and double-spaced.  Plaintiff's memorandum is neither.  Counsel for plaintiff is further advised to review L.R.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: July 17, 2015

cc:  Elizabeth R. Jones, Esq.
     T. David Plourde, Esq.

---

5.3 for guidance on citing unreported opinions in lieu of
employing an incomprehensible amalgam of citation styles.  As
these violations are de minimis, the court will take no remedial
action, but counsel is advised that the court expects compliance
with all applicable rules of procedure in the future.